Citation Nr: 1443657 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 11-18 110 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss. 

2. Entitlement to service connection for bilateral ankle disorder.

3. Entitlement to service connection for low back disorder.

4. Entitlement to service connection for bilateral knee disorder.

5. Entitlement to service connection for benign prostatic hypertrophy (BPH) with urinary obstruction.

6. Entitlement to service connection for right inguinal hernia.

7. Entitlement to service connection for chronic renal failure.
 
8. Entitlement to service connection for sleep apnea.

9. Entitlement to service connection for hypertension. 

10. Entitlement to service connection for gout.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J.N. Moats, Counsel


INTRODUCTION

The Veteran had active service from June 1946 to June 1966. 

This matter comes before the Board of Veterans' Appeals (Board or BVA) on appeal from a January 2010 rating decision of the Department of Veterans Affairs (VA) Regional Offices (RO) in Cleveland, Ohio. The claim is currently under the jurisdiction of the Waco, Texas RO. 

The Veteran presented testimony before the RO with regard to the service connection issues of hearing loss, hypertension, and gout at an informal hearing conference dated in January 2011. In his June 2011 VA Form 9 (Appeal to Board of Veterans' Appeals), he requested a Board hearing but withdrew this request by correspondence dated in July 2011. 

In January 2014, the Board remanded the appeal for further development. The case has now been returned for appellate review. 

The issues of entitlement to service connection for frostbite of the left foot, right foot, left hand and right hand were also on appeal and remanded by the Board in January 2014. However, in a June 2014 rating decision, the RO granted service connection for these disabilities. As this was a full grant of the benefits sought on appeal, they are no longer in appellate status. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issues of entitlement to service connection for bilateral ankle disorder, low back disorder, bilateral knee disorder, BPH with urinary obstruction and gout are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Bilateral hearing loss is not shown to be causally or etiologically related to in-service noise exposure, and it did not manifest within one year of the Veteran's retirement from service.

2. Right inguinal hernia is not shown to be causally or etiologically related to any disease, injury, or incident in service.

3. Chronic renal failure is not shown to be causally or etiologically related to any disease, injury, or incident in service, but has been attributed to the Veteran's nonservice-connected hypertension.

4. Sleep apnea is not shown to be causally or etiologically related to any disease, injury, or incident in service.

5. Hypertension is not shown to be causally or etiologically related to any disease, injury, or incident in service, and it did not manifest within one year of the Veteran's retirement from service.
 

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1116, 1131, 1137, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2013). 

2. The criteria for service connection for a right inguinal hernia have not met. 38 U.S.C.A. §§ 1101, 1110, 1116, 1131, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2013). 

3. The criteria for service connection for chronic renal failure have not met. 38 U.S.C.A. §§ 1110, 1116, 1131, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2013). 

4. The criteria for service connection for sleep apnea have not met. 38 U.S.C.A. §§ 1110, 1116, 1131, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2013). 

5. The criteria for service connection for hypertension have not met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1116, 1131, 1137, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2013). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim, including the degree of disability and the effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

The Veteran was sent letters in July and September 2009 that fully addressed all notice elements and were sent prior to the initial January 2010 rating decision in this matter. The letters provided information as to what evidence was required to substantiate the claims herein decided and of the division of responsibilities between VA and a claimant in developing an appeal. Moreover, the letters informed the Veteran of what type of information and evidence was needed to establish a disability rating and effective date. Accordingly, no further development is required with respect to the duty to notify.

Next, VA has a duty to assist the Veteran in the development of the claims. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment, post-service reports of private and VA treatment and VA examination reports. The RO has requested at least twice all private treatment records identified by the Veteran and either received such records or no response. Moreover, the Veteran's statements in support of the claim, as well as his RO hearing testimony, are of record. The Board has carefully reviewed such statements and concludes that no available outstanding evidence has been identified. The Board has also perused the medical records for references to additional treatment reports not of record. Nevertheless, these records are silent with respect to any outstanding medical evidence. 

Additionally, with respect to the claims for hearing loss and hypertension, the Veteran was afforded VA examinations in February 2011 and April 2014, respectively. The Board finds that the VA examinations with opinions are adequate because, as shown below, it based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and provides sufficient medical opinions with rationales so as to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). 

The Veteran has not been afforded an examination in connection with the remaining issues herein decided; however, the Board finds that such is not necessary in the instant case. In determining whether the duty to assist requires that a VA medical examination be provided or medical opinion obtained with respect to a Veteran's claim for benefits, there are four factors for consideration. 

These four factors are: (1) whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) whether there is evidence establishing that an event, injury, or disease occurred in service, or evidence establishing certain diseases manifesting during an applicable presumption period; (3) whether there is an indication that the disability or symptoms may be associated with the Veteran's service or with another service-connected disability; and (4) whether there otherwise is sufficient competent medical evidence of record to make a decision on the claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4). 

With respect to the third factor above, the United States Court of Appeals for Veterans Claims (Court) has stated that this element establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and the Veteran's service. The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Specifically, the Veteran's service treatment records are silent as to any right inguinal hernia, chronic renal failure or sleep apnea. Moreover, the Veteran has not provided any lay evidence of in-service incidents. There is also no evidence indicating any association with military service. The Court has held that VA is not required to provide a medical examination when there is not credible evidence of an event, injury, or disease in service. See Bardwell v. Shinseki, 24 Vet. App. 36 (2010). Additionally, a mere conclusory generalized lay statement that service event or illness caused the claimant's current condition is insufficient to require the Secretary to provide an examination. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). Therefore, the Board finds that a VA examination and/or opinion are not necessary to decide these issues. 

Finally, the Board finds that there was substantial compliance with the January 2014 remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999). 

In particular, the Board in the January 2014 remand directed the AOJ to request clarification as to whether the Veteran still wanted to appeal the issues of entitlement to service connection for bilateral ankle disorder, a low back disorder, bilateral knee disorder, benign prostatic hypertrophy with urinary obstruction, right inguinal hernia, chronic renal failure, and sleep apnea. A June 2014 report of contact stated that the Veteran did wish to continue his appeal, but did not want a Board hearing. The AOJ was also directed to request any outstanding service treatment records. Additional service treatment records were requested and received in February 2014. 

The AOJ was also directed to send a letter to the Veteran giving him the opportunity to identify any further healthcare providers who had treated him for his claimed disorders. The AOJ sent such letter in February 2014; however, to date, the Veteran has not responded. The AOJ was also directed to obtain any outstanding treatment records, which was done in February 2014, as well as any additional VA treatment records, which were obtained dated to June 2014. 

Moreover, the AOJ was also directed to schedule the Veteran for appropriate VA examination to address the etiology of his hypertension. As noted above, the Veteran was afforded a VA examination with opinion in April 2014 that is adequate for appellate review. Accordingly, the Board finds that there has been substantial compliance with the January 2014 Board remand directives and, therefore, no further remand is necessary. See Stegall, supra; D'Aries, 22 Vet. App. at 104 (2008).

In sum, the Board finds that all reasonable efforts have been undertaken by VA with respect to the instant appeal, and no further development is required under these circumstances. For the above reasons, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

II. Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C.A. §§ 1112, 1137; 38 C.F.R. § 3.304. See also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as hypertension and organic diseases of the nervous system, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

The Board recognizes that lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

In weighing credibility of lay statements, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Hearing Loss

The present appeal involves a claim of entitlement to service connection for bilateral hearing loss. Service connection for impaired hearing is subject to 38 C.F.R. § 3.385, which provides that impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 

The Board acknowledges that the lack of any evidence that the Veteran exhibited hearing loss during service is not fatal to his claim. The laws and regulations do not require in service complaints of or treatment for hearing loss in order to establish service connection. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Instead, as noted by the United States Court of Appeals for Veterans Claims (Court):

[W]here the regulatory threshold requirements for hearing disability are not met until several years after separation from service, the record must include evidence of exposure to disease or injury in service that would adversely affect the auditory system and post- service test results meeting the criteria of 38 C.F.R. § 3.385....For example, if the record shows (a) acoustic trauma due to significant noise exposure in service and audiometric test results reflecting an upward shift in tested thresholds in service, though still not meeting the requirements for "disability" under 38 C.F.R. § 3.385, and (b) post-service audiometric testing produces findings meeting the requirements of 38 C.F.R. § 3.385, rating authorities must consider whether there is a medically sound basis to attribute the post-service findings to the injury in service, or whether they are more properly attributable to intercurrent causes.

Hensley v. Brown, 5 Vet. App. 155, 159 (1993) (quoting from a brief of the VA Secretary).

In statements of record and at the RO hearing, the Veteran has asserted that his hearing loss was due to exposure to acoustic trauma during service, including aircraft, artillery and automatic weapons. He also reported noise exposure due to his duties as a heavy vehicle mechanic. The Veteran's service personnel record showed that his military occupational specialty in the United States Army was vehicle mechanic. 

The Veteran service treatment records are silent with respect to any complaints of or findings of hearing loss. Significantly, the January 1966 service examination prior to retirement showed that the Veteran's ears were clinically evaluated as normal. No hearing abnormality was noted by the examiner and there was no indication of any complaints of hearing loss by the Veteran. 

The first post service evidence of any hearing loss due to noise exposure in service was when the Veteran filed his initial, current claim for hearing loss in May 2009, which was filed approximately 43 years after the Veteran's retirement from service. 

The Veteran was afforded a VA examination in February 2011. The claims file was reviewed. The Veteran again reported military noise exposure from anti-aircraft guns, artillery and vehicles. After service, he worked for 25 years for Halliburton running "lathe machine" with required hearing protection. The examiner observed that the Veteran's retirement physical documented normal hearing for all test frequencies and there was no report of hearing loss or tinnitus found in service treatment records. The hearing test showed pure tone thresholds, in decibels, as follows:

HERTZ


500
1000
2000
3000
4000
Right 
15
20
60
70
65
Left
15
25
50
60
55

Speech recognition was 96 percent in both ears. The impression was bilateral sensorineural hearing loss. The examiner determined that it was less likely as not caused by or result of his military noise exposure. The examiner observed that no hearing loss was present for either ear at retirement in 1966. The Veteran's current hearing loss had its onset between the 45 years since retirement and this day. Current literature supports that hearing loss due to excessive noise exposure occurs near the time to exposure to hazardous noise. The examiner also noted that the Veteran had significant opportunity for occupational noise exposure, and the effects of the aging process on hearing (presbycusis) was also a consideration. 

Given that the claims file was reviewed by the examiner and the examination report sets forth detailed examination findings in a manner which allows for informed appellate review under applicable VA laws and regulations, the Board finds the examinations to be sufficient for appellate review and of high probative value. 

The Board accepts that the medical evidence of record shows that the Veteran meets the requirements of 38 C.F.R. § 3.385 for hearing loss disability. The Board is thus presented with an evidentiary record which does not show hearing loss at the time of discharge from service. Although the Veteran does now suffer from a hearing loss disability, the first medical evidence indicating hearing loss was many years after the Veteran's retirement from service. As a result, with the exception of the Veteran's contentions, which are discussed more fully below, there is no supporting evidence of a continuity of pertinent symptomatology. Further, after reviewing the claims file and examining the Veteran, the VA examiner determined that the Veteran's current hearing loss was not due to noise exposure in service and provided a detailed rationale for this conclusion. Importantly, there is no competent medical evidence of record to refute this opinion. Further, as there is no competent medical evidence of sensorineural hearing loss within a year of discharge, the service incurrence of sensorineural hearing loss may not be presumed. Again, it was many years after the Veteran's discharge from service before any medical evidence of hearing loss so there is no supporting medical evidence of a continuity of pertinent symptomatology to support an award of service connection. See Walker, cited above. Moreover, a lengthy period without evidence of treatment may also be viewed as evidence weighting against the Veteran's claim. See generally Maxson v. Gober, 230 F.3d 1330 (Fed.Cir. 2000). 

The Board acknowledges the Veteran's statements indicating that his current hearing loss is related to noise exposure in service. Lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Citing Buchanan and Jandreau, the Federal Circuit recently reiterated that it had previously and explicitly rejected the view that competent medical evidence is required when the determinative issue in a claim for benefits involves either medical etiology or a medical diagnosis. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The Veteran is not competent to provide a medical nexus opinion linking his current hearing loss to acoustic trauma in service. However, when applying the case law discussed above, here, the Veteran is competent to say that he was exposed to loud noise in service and experienced symptoms while in service as well as to report a continuity of symptoms since service. However, the Veteran has not provided any lay evidence indicating symptoms in service. Importantly, the Veteran's retirement examination showed that he denied all other significant medical history. It would seem reasonable that the Veteran would have reported hearing problems at that time if he was in fact experiencing them. Again, the examination showed that hearing was within normal limits. Significantly, based on the Veteran's military occupation which suggested noise exposure, he was afforded a VA examination to determine whether his current hearing loss was related to the noise exposure in service. After reviewing the claims file, taking a thorough history from the Veteran, and providing a complete audiological examination, the audiologist determined that his hearing loss was not related to service and provided a rationale for this opinion. 

As to any contentions of hearing loss since service, the Board finds the credibility of any such assertions to be diminished by the other evidence of record. In this regard, the Veteran failed to report any hearing problems at his retirement. Further, the Veteran first advanced his current contention 43 years after service when he filed his hearing loss claim in 2009. The Board also believes it reasonable to assume that he would have filed a claim sooner if he in fact believed that he had been suffering from hearing loss since service as the result of noise exposure. Moreover, there is no evidence suggesting that he ever sought medical treatment for hearing loss for many years after service. This further diminishes the credibility as to a continuity of symptomatology since service. In sum, any contentions of pertinent symptomatology since service are inconsistent with the totality of the other evidence of record and cannot be deemed credible. Accordingly, the Veteran's contentions have no probative value and are outweighed by the remaining evidence of record, specifically, the highly probative VA examination, which found no relation to service. 

In conclusion, the preponderance of the evidence is against a finding that the Veteran's bilateral hearing loss is related to his active duty service. As a preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. 38 U.S.C.A. § 5107(b).


Right Inguinal Hernia

The Veteran is also seeking service connection for right inguinal hernia. Service treatment records are completely silent for any complaints or diagnosis pertaining to any right inguinal hernia. Importantly, the Veteran's January 1966 service examination prior to retirement was silent with respect to any objective findings of a right inguinal hernia. In his contemporaneous medical history, the Veteran did not report any symptoms pertaining to a right inguinal hernia. 

Post service private treatment records dated in December 2006 showed that the Veteran underwent another hernia operation and noted a history recurrent bilateral hernias. The private doctor indicated that the first hernia operation was approximately 15 years prior, which would have been around 1991. 

Moreover, the first post service evidence of a right inguinal hernia related to service was when the Veteran filed his initial claim in May 2009, 43 years after the Veteran's retirement from service. 

After considering the totality of the evidence of record, the Board finds that service connection for a right inguinal hernia is not warranted as there is no competent evidence linking any such disability to service. Again, service treatment records are silent with respect to any complaints or diagnosis pertaining to a right inguinal hernia. Importantly, the Veteran's January 1966 retirement examination was silent with respect to any findings of a right inguinal hernia. Moreover, in his contemporaneous medical history, he was completely silent with respect to any symptoms associated with a right inguinal hernia. Importantly, the Veteran has not provided any lay evidence describing symptoms in service or pertinent symptoms since service. As noted above, the first post service evidence of any right inguinal hernia was approximately in 1991. Moreover, right inguinal hernia is not one of the enumerated diseases listed in 38 C.F.R. § 3.309. Thus, a continuity of symptoms may not be used to establish service connection. See Walker, supra. 

Again, in the instant case, the Veteran is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Veteran's own opinion is nonprobative evidence. See Davidson, supra; Jandreau, supra; see also Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

In conclusion, based on the analysis above, the Board finds that the preponderance of evidence is against the Veteran's claim for service connection for a right inguinal hernia. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b).

Sleep Apnea

The Veteran is also seeking service connection for sleep apnea. Again, service treatment records are completely silent for any complaints or diagnosis pertaining to sleep apnea. Importantly, the Veteran's January 1966 service examination prior to retirement was silent with respect to any objective findings of sleep apnea. In his contemporaneous medical history, the Veteran did not report any symptoms pertaining to sleep apnea. 

Again, the first post service evidence of sleep apnea related to service was when the Veteran filed his initial claim in May 2009, 43 years after the Veteran's retirement from service. Post service private treatment records dated in September 2012 showed that the Veteran underwent a sleep study and was diagnosed with sleep apnea. 

After considering the totality of the evidence of record, the Board finds that service connection for sleep apnea is not warranted as there is no competent evidence linking any such disability to service. Again, service treatment records are silent with respect to any complaints or diagnosis pertaining to sleep apnea. Importantly, the Veteran's January 1966 retirement examination was silent with respect to any findings of sleep apnea. Moreover, in his contemporaneous medical history, he was completely silent with respect to any symptoms associated with sleep apnea. Importantly, the Veteran has not provided any lay evidence describing symptoms in service or pertinent symptoms since service. As noted above, the first post service evidence of any sleep was approximately in 2009 when the Veteran filed his claim for service connection. Moreover, sleep apnea is not one of the enumerated diseases listed in 38 C.F.R. § 3.309. Thus, a continuity of symptoms may not be used to establish service connection. See Walker, supra. 

Again, in the instant case, the Veteran is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Veteran's own opinion is nonprobative evidence. See Davidson, supra; Jandreau, supra; see also Woehlaert, supra. 

In conclusion, based on the analysis above, the Board finds that the preponderance of evidence is against the Veteran's claim for service connection for sleep apnea. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b).

Hypertension with Chronic Renal Failure 

The Veteran is also seeking service connection for hypertension. Service treatment records do not show a hypertension diagnosis. The Veteran's January 1966 service examination prior to retirement was also silent with respect to any findings for hypertension. In his report of medical history, the Veteran expressly denied high blood pressure. He further signed a statement in June 1966 indicating that there had been no change in his medical condition since the January 1966 examination. 

Post service private treatment records dated from approximately December 2000 showed that that the Veteran had reported a history of hypertension since approximately 1968. He was also diagnosed with renal failure in December 2000 due to his hypertension around that time. 

The Veteran was afforded a VA examination in April 2014 in connection with his claim for service connection. The Veteran claimed that he had hypertension in service, but he was not sure whether he was treated with medication or not. The Veteran further asserted that he was diagnosed with hypertension within one year of retiring from service. He was treated with medications at that time and still took medication for his condition. The examiner observed the blood pressure readings taken during service and found that none of them were within the medical definition of hypertension or even prehypertension. The examiner observed that the January 1966 retirement examination was negative for hypertension. The examiner further noted that private treatment records documented a history of hypertension since 1968. 

As such, given the above history as reported by the Veteran, the examiner determined that the Veteran's hypertension onset date could be as early as 1968 and as late as 1985. However, even if the onset was in 1968, the examiner pointed out that this period was still greater than one year after service, which would be June 30, 1967. Since the in-service blood pressure readings are not within range of prehypertension or hypertension, it cannot be connected to his post military onset of hypertension, and are, therefore, not likely to be connected to service. The examiner again observed that although there were no treatment records from January to June 1966, the Veteran did sign a statement indicating that there had been no change in his condition. The examiner opined that if the Veteran had been diagnosed with hypertension, he would have reported it at that time. There it is only assumed that he did not have a diagnosis at the date of separation. 

In conclusion, the examiner opined that it was not at least as likely as not that hypertension was connected to military service since it was not supported by any in-service medical records or records within one year of service. The Veteran reports the onset date from 1968 to 1985, all of which are beyond one year post military service. 

Again, the VA examiner considered the Veteran's claims file and medical history in the report. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Ardison v. Brown, 6 Vet. App. 405, 407 (1994). Additionally, the VA examiner provided an etiological opinion, complete with the rationale described above. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Consequently, the Board assigns great probative value to the VA examiner's opinion.

Initially, starting first with presumptive service connection, the Board notes that, although hypertension has been diagnosed, there is no evidence of hypertension within one year of service. In fact, the first medical evidence showing a diagnosis of hypertension is approximately in December 2000, although the records documented a long standing history of hypertension since 1968, there is simply no competent medical evidence of hypertension within the first year of retirement. As such, an award of service connection on a presumptive basis for chronic disease is precluded. 38 C.F.R. §§ 3.307, 3.309.

Moreover, as there is no evidence of hypertension in service or for many years after service, the Board also must find that service connection for hypertension on a direct basis is not warranted. Service treatment records are silent with respect to any findings of hypertension. Importantly, the April 2014 VA examiner clearly found that hypertension was not related to service and provided a detailed rationale for this opinion. There is no competent medical evidence of record to refute this opinion. 

Again, the Veteran is not competent to directly link any current disability to service as medical expertise is required. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Veteran's own opinion is nonprobative evidence. See Davidson, supra; Jandreau, supra; see also Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). 

Nevertheless, the Board again observes that lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Citing Buchanan and Jandreau, the Federal Circuit reiterated that it had previously and explicitly rejected the view that competent medical evidence is required when the determinative issue in a claim for benefits involves either medical etiology or a medical diagnosis. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

In the instant case, the Veteran has maintained that he was diagnosed with hypertension in service or within one year of service. However, the competent medical evidence of record refutes this assertion. Again service treatment records are silent with respect to any such findings. Importantly, the Veteran expressly denied having high blood pressure in his January 1966 Report of Medical History and indicated that there was no change to his medical condition in June 1966. Importantly, post service private treatment records appear to indicate that the earliest possible onset of hypertension would be 1968. Moreover, the April VA examiner, after reviewing such records, clearly found that the Veteran did not have hypertension in service or within one year of retirement. As such, the Veteran's assertions are outweighed by the medical evidence of record. Moreover, he has not provided any lay evidence showing a continuing of symptomatology since service. Again, the medical evidence shows that she was first diagnosed approximately in 2001. See Walker, supra. As such, service connection on a direct basis is not warranted. 

Moreover, there is no competent medical or lay evidence of chronic renal disease in service and the post service treatment records clearly attribute chronic renal disease to the Veteran's hypertension. As the Veteran hypertension has been found to not be related to service, there is no basis for awarding service connection for chronic renal disease. 38 C.F.R. § 3.310. 

In conclusion, based on the analysis above, a preponderance of the evidence is against the Veteran's claim for service connection for hypertension and chronic renal disease. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b).


ORDER

Service connection for bilateral hearing loss is denied. 

Service connection for right inguinal hernia is denied.

Service connection for chronic renal failure is denied.
 
Service connection for sleep apnea is denied.

Service connection for hypertension is denied.


REMAND

Inasmuch as the Board sincerely regrets the additional delay of the adjudication of these matters, a remand is necessary before the Veteran's remaining claims on appeal can be adjudicated.

The Veteran is seeking service connection for a low back disorder, bilateral knee disorder and BPH with urinary obstruction, which he claims are related to service. Service treatment records showed that in October 1948, the Veteran struck both knees. Moreover, in December 1950, the Veteran presented with low back pain. Further, it appears that the Veteran's also had urinary issues, including a urinary tract infection in January 1956 and enlarged right testicle in 1963. The Veteran has not been afforded a VA examination with respect to these issues. As noted above, VA will provide a medical examination or obtain a medical opinion if the record, including lay or medical evidence, contains competent evidence of a disability that may be associated with an event, injury, or disease that occurred in service, but the record does not contain sufficient medical evidence to decide the claim. 38 U.S.C.A. § 5103A(d) (West 2002); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The threshold for determining whether the evidence "indicates" that there "may" be a nexus between a current disability and an in-service event, injury, or disease is a low one. McLendon, 20 Vet. App. at 83. Under the circumstances of this case, the Board finds that medical examination and opinion by an appropriate physician would be helpful in resolving the claims for service connection. 

The Board also observed that when determining service connection, all theories of entitlement must be considered. Szemraj v. Principi, 357 F.3d 1370, 1371 (Fed. Cir. 2004); see also Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001). In this case, the Veteran is seeking service connection for his orthopedic disabilities of the back, knees and ankles. In a June 2014 rating decision, the Veteran was awarded service connection for cold injuries of both feet. In an April 2014 VA examination report, it was also observed that the Veteran used a cane for his feet for stability. As the Veteran has indicated that all of his disabilities are interrelated, a medical opinion as to whether these orthopedic disabilities are proximately due to or aggravated by his service connected feet disabilities is also necessary. 

With respect to the issue of entitlement to service connection for gout, in the Board's prior remand, the RO was directed to afford the Veteran a VA examination with etiological opinion. At the April 2014 VA examination, the examiner determined that the Veteran's gout was not caused by or a result of the Veteran's now service-connected cold injuries. The examiner found that the Veteran's gout was secondary to his chronic renal failure. However, the VA examiner did not provide an opinion as to whether the Veteran's gout was aggravated by her service-connected cold injuries as directed in the prior Board remand. See 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995). See Stegall v. West, 11 Vet. App 268 (1998). Accordingly, the Board finds that a remand is necessary to obtain an addendum opinion on aggravation. 

Furthermore, a review of the record shows VA treatment records dated through June 2014. As it appears likely that VA treatment records dated subsequent to June 2014 are in existence but not yet of record any outstanding VA outpatient treatment records should be obtained on remand. Bell v. Derwinski, 2 Vet. App. 611 (1992).

Lastly, with respect to the issue of service connection for a bilateral ankle disorder, the Veteran has not received VCAA notice with respect to this issue. Moreover, the Veteran has not been sent notice providing the information and evidence necessary to establish service connection on a secondary basis. As such, the AOJ should send appropriate VCAA notice to correct these deficiencies. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should send the appellant a corrective VCAA notice informing him of the information and evidence necessary to establish service connection for a bilateral ankle disorder. The letter should also provide notice of the information and evidence necessary to establish service connection for a bilateral ankle disorder, low back disorder and bilateral knee disorder on a secondary basis. Further, the notice should include the information and evidence necessary for assignment of an effective date pursuant to Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

2. The AOJ should request an addendum opinion from the same examiner who conducted the April 2014 VA examination. The examiner should opine whether it is at least as likely as not (a 50% or higher degree of probability) that the Veteran's gout has been aggravated by the Veteran's service-connected cold injuries. For any aggravation found, the examiner should state, to the best of their ability, the baseline of symptomatology and the amount, quantified if possible, of aggravation beyond the baseline symptomatology by the aggravation. If the same examiner is not available, another appropriate physician should be requested to provide such opinion. The Veteran should only be afforded another appropriate VA examination, if the examiner finds it necessary. 

All opinions should be supported by a clear rationale, and a discussion of the facts and medical principles. 

3. The AOJ should schedule the Veteran for an appropriate VA examination to determine the nature and etiology of any current low back disorder, bilateral ankle bilateral knee disorder and BPH with urinary obstruction. The record, including a copy of this remand, must be made available to the examiner for review. 

With respect to the low back and knees, the examiner should clearly delineate all disorders of the low back and knees. After reviewing the record and examining the Veteran, the examiner should determine whether it is at least as likely as not (a 50% or higher degree of probability) that any current low back and/or bilateral knee disabilities had their onset in service, or are otherwise related to service. 

With respect to the bilateral ankles, low back and knees, the examiner should determine whether it is at least as likely as not (a 50% or higher degree of probability) that any current low back, bilateral ankle or bilateral knee disabilities are proximately due to, or caused by, the Veteran's service-connected cold injuries of the feet; and whether it is at least as likely as not (a 50% or higher degree of probability) that any current low back, bilateral ankle or bilateral knee disabilities have been aggravated by the Veteran's service-connected cold injuries of the feet. For any aggravation found, the examiner should state, to the best of their ability, the baseline of symptomatology and the amount, quantified if possible, of aggravation beyond the baseline symptomatology by the aggravation.

With respect to BPH with urinary obstruction, after reviewing the record and examining the Veteran, the examiner should determine whether it is at least as likely as not (a 50% or higher degree of probability) that the Veteran's disability had its onset in service, or are otherwise related to service. 

A detailed rationale for all opinions expressed should be furnished. In proffering this opinion, the examiner should address the Veteran's service treatment records and post service treatment records. 

4. Thereafter, and any further development deemed necessary, the issues remaining on appeal should be
readjudicated. If the benefits sought on appeal are not granted, the Veteran and his representative should be provided with a supplemental statement of the case and afforded the appropriate opportunity to respond thereto. Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).


This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs